## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Mark Falk |
| | : | |
| v. | : | Mag. No. 20-1002 |
| | : | |
| QSHAUN BROWN-GUINYARD, | : | |
| DASHAWN DUNCAN, | : | **CRIMINAL COMPLAINT** |
| TAMIR DUVAL, | : | |
| NASHEED JACKSON, | : | |
| ALEXANDER VARICE, and | : | **FILED UNDER SEAL** |
| ALLEN VARICE | : | |

I, Brian J. Macdonald, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Postal Inspector with the United States Postal Inspection Service, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Brian J. Macdonald
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me and subscribed in my presence,

March 3, 2020                    at          Essex County, New Jersey
Date                                              County and State

Honorable Mark Falk
United States Chief Magistrate Judge          Signature of Judicial Officer

## ATTACHMENT A

### COUNT 1
### (Conspiracy to Commit Bank Fraud)

From at least as early as in or about August 2018 through in or about January 2020, in the District of New Jersey, and elsewhere, defendants

**QSHAUN BROWN-GUINYARD,**
**DASHAWN DUNCAN,**
**TAMIR DUVAL,**
**NASHEED JACKSON,**
**ALEXANDER VARICE, and**
**ALLEN VARICE**

knowingly and intentionally conspired and agreed with each other and others to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, and to obtain money, funds, assets, and other property owned by and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Brian J. Macdonald, am a Postal Inspector with the United States Postal Inspection Service. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and evidence. Where statements of others are related herein, they are related in substance and part. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

## Background

1. At all times relevant to this Complaint:

   a. Defendant Qshawn Brown-Guinyard ("BROWN-GUINYARD") was a resident of Newark, New Jersey.

   b. Defendant Dashawn Duncan ("DUNCAN") was a resident of Newark, New Jersey.

   c. Defendant Tamir Duval ("DUVAL") was a resident of Newark, New Jersey.

   d. Defendant Nasheed Jackson ("JACKSON") was a resident of Newark, New Jersey.

   e. Defendant Alexander Varice ("ALEX VARICE") was a resident of East Orange, Hillside, and West Orange, New Jersey.

   f. Defendant Allen Varice ("ALLEN VARICE") was a resident of East Orange, Hillside, and West Orange, New Jersey.

   g. The following were "financial institutions," as that term is defined in 18 U.S.C. § 20: "Bank-1," a financial institution headquartered in McLean, Virginia; and "Bank-2," a financial institution headquartered in Charlotte, North Carolina.

## The Conspiracy

2. From at least as early as in or about August 2018 through in or about January 2020, BROWN-GUINYARD, DUNCAN, DUVAL, JACKSON, ALEX VARICE, ALLEN VARICE (collectively, the "CO-CONSPIRATORS"), and others have engaged in a scheme to use credit cards and checks that were stolen from United States Postal Service-used facilities to fraudulently withdraw money from

3

financial institutions and to make purchases that they had no intention to repay, leaving the financial institutions to bear the losses of the scheme.

3.    The credit cards, issued and shipped by Bank-1 from Virginia to New Jersey, were stolen from a third party sorting facility used by the United States Postal Service ("USPS") in Pine Brook, New Jersey (the "sorting facility"), as well as from a post office in Warren, New Jersey. Because the cards were stolen, they never reached the intended cardholders. The CO-CONSPIRATORS often placed calls to Bank-1 to either activate the stolen cards or check the account balance on those cards. After obtaining the stolen cards, the CO-CONSPIRATORS and others used them to make unauthorized purchases at various retail stores and to withdraw cash from Bank-1 automated teller machines ("ATMs") in New Jersey and elsewhere. The CO-CONSPIRATORS never repaid these debts and withdrawals and had no intention of doing so.

4.    Personal and cashier's checks also were stolen from various New Jersey-based post office facilities. Because the checks were stolen, they never reached the intended recipients. BROWN-GUINYARD, DUVAL, JACKSON, ALEX VARICE, and ALLEN VARICE used these checks to fraudulently withdraw money from third-party account holders' accounts at Bank-2. The Bank-2 account holders were often recruited via social media and provided their Bank-2 debit cards and pin numbers to the CO-CONSPIRATORS, as part of the conspiracy. Often the CO-CONSPIRATORS would alter the date, payee, or amount of the stolen checks before depositing them or would leave the amount of the checks blank, so that they could manually enter the amount that they wanted to fraudulently withdraw from a Bank-2 ATM. These CO-CONSPIRATORS never repaid these withdrawals and had no intention of doing so.

5.    In addition to withdrawing cash from Bank-2 ATMs when depositing these checks, BROWN-GUINYARD, DUVAL, JACKSON, ALEX VARICE, and ALLEN VARICE also obtained money from the scheme in other ways, including, but not limited to, making cash withdrawals using the debit card's four digit pin number from the Bank-2 ATMs at the time of the fraudulent deposits; using Bank-2 debit cards with pin numbers to draw on the deposit accounts to purchase money orders from the U.S. Postal Service and/or private vendors; and using Bank-2 debit cards with pin numbers to make small transactions at retailers using the "cash back" option at checkout. BROWN-GUINYARD, DUVAL, JACKSON, ALEX VARICE, and ALLEN VARICE never repaid these debts and withdrawals and had no intention of doing so.

6.    Specific examples of the CO-CONSPIRATORS' activity in executing the conspiracy are set forth in the following paragraphs.

## Defendant BROWN-GUINYARD

7.      On or about August 30, 2018, surveillance footage from Bank-2 ATMs located in West Caldwell and Roseland, NJ captured BROWN-GUINYARD depositing five blank checks into a third-party's Bank-2 account ending in -1210, for which he manually entered deposit amounts totaling $2,900. These checks were stolen and BROWN-GUINYARD attempted to withdraw those funds from a known, third-party's account at Bank-2.

8.      On or about April 6, 2019, surveillance footage from a Retail Store-1 in New York, NY captured BROWN-GUINYARD using Bank-1 credit card ending in -4095 to purchase merchandise in the amounts of $3,264.07 and $6,094.82. Bank-1 credit card ending in -4095 was in the name of A.C, a resident of Los Angeles, California, and BROWN-GUINYARD was not authorized to use this credit card.

9.      On or about April 24, 2019, surveillance footage from a Bank-1 ATM located on Market Street in Newark, NJ captured BROWN-GUINYARD attempting to withdraw $200 using a stolen Bank-1 credit card ending in number -4583. The transaction was declined. Bank-1 credit card ending in -4583 belonged to A.P, a resident of Dublin, California, and BROWN-GUINYARD was not authorized to use this credit card.

## Defendant DUNCAN

10.      On or about May 3, 2019, surveillance footage from a Retail Store-2 located in Paramus, NJ captured DUNCAN using stolen Bank-1 credit card ending in number -1019 to purchase merchandise for $1,363.68. Bank-1 credit card ending in -1019 belonged to R.M., a resident of Freemont, California, and DUNCAN was not authorized to use this credit card.

11.      On or about May 13, 2019, surveillance footage from a Retail Store-2 located in Short Hills, NJ captured DUNCAN using stolen Bank-1 credit card ending in number -6698 two times to purchase merchandise for $1,331.75. Bank-1 credit card ending in -6698 belonged to J.B., a resident of Los Angeles, California, and DUNCAN was not authorized to use this credit card.

## Defendant DUVAL

12.      On or about August 31, 2018, surveillance footage from a Bank-2 ATM located in Glen Ridge, NJ captured DUVAL depositing five blank checks into a third-party's Bank-2 account number ending in -0378 and manually entering a deposit amount totaling $4,770. On that same date and following this deposit, DUVAL and others withdrew $4,608.31 from this account in the form of cash withdrawals and debit transactions.

13.     On or about September 6, 2018, surveillance footage from a Bank-2 ATM located in Somerset, NJ captured DUVAL and ALLEN VARICE depositing five blank checks into a Bank-2 account ending in -1173, for which DUVAL manually entered a deposit amount totaling $3,460. On that same date and following this deposit, DUVAL and others withdrew $1,699.91 from this account in the form of cash withdrawals and debit transactions.

14.     On or about April 14, 2019, surveillance footage from a Bank-1 ATM located in Parsippany, NJ captured DUVAL using Bank-1 credit card ending in -0230 to withdraw $200. Bank-1 credit card ending in -0230 belonged to A.A, a resident of Santa Clara, California, and DUVAL was not authorized to use this credit card.

## Defendant JACKSON

15.     On or about August 27, 2018, surveillance footage from Bank-2 ATMs located in Newark and Scotch Plains, NJ captured JACKSON with a known male depositing five blank checks into a third-party's Bank-2 account ending in -9294, for which he manually entered a deposit amount totaling $3,750. On that same date and following these deposits, JACKSON and others withdrew $2,230 from this account in the form of cash withdrawals and debit transactions.

16.     From on or about September 6, 2018 and on or about September 7, 2018, surveillance footage from a Bank-2 ATM located in Irvington, NJ captured JACKSON with an unidentified male depositing 11 blank checks into a third-party's Bank-2 account ending in -8864, for which JACKSON manually entered a deposit amount totaling $9,739.32. From on or about September 6, 2018 to September 8, 2018, JACKSON and others withdrew $4,595.10 from this account in the form of cash withdrawals from various ATMs and debit transactions.

17.     On or about April 12, 2019, surveillance footage from a Bank-1 ATM located in Lodi, NJ captured JACKSON, along with ALEX VARICE, using a stolen Bank-1 credit card ending in -3873 to withdraw $300. Bank-1 credit card ending in -3873 belonged to V.I., a resident of Hayward, California, and JACKSON was not authorized to use this credit card.

## Defendant ALEX VARICE

18.     On or about August 28, 2018, surveillance footage from a Bank-2 ATM located in Milltown, NJ captured ALEX VARICE with ALLEN VARICE and DUVAL depositing five blank checks into a third-party's Bank-2 account ending in -4365, for which he manually entered a deposit amount of $3,200. On that same date and following this deposit, DUVAL, ALLEN VARICE, and others withdrew $1,591.70 from this account in the form of cash withdrawals and debit transactions.

6

19.    On or about July 15, 2019, surveillance footage from a Bank-1 ATM located in Newark, NJ captured ALEX VARICE using stolen Bank-1 credit card ending in -8202 to withdraw $200. Bank-1 credit card ending in -8202 belonged to C.P., a resident of Linden, NJ, and ALEX VARICE was not authorized to use this credit card.

## Defendant ALLEN VARICE

20.    On or about March 6, 2019, surveillance footage from a Bank-2 located in Fort Lee, NJ captured ALLEN VARICE with an unnamed male depositing an altered cashier's check into a third-party's Bank-2 account ending in -3711 for $16,367.11. On that same date and following this deposit, ALLEN VARICE and others withdrew $16,361.16 from this account in the form of cash and debit transactions.

21.    On or about April 12, 2019, surveillance footage from a Bank-1 ATM located in Livingston, NJ captured ALLEN VARICE using stolen Bank-1 credit card ending in -4095 to withdraw $400. Bank-1 credit card ending in -4095 belonged to B.S., a resident of Alameda, California, and ALLEN VARICE was not authorized to use this credit card.

22.    On or about June 19, 2019, surveillance footage from a Bank-1 ATM located in Livingston, NJ captured ALLEN VARICE using stolen Bank-1 credit card ending in -7850 to withdraw $200.  Bank-1 credit card ending in -7850 belonged to M.A., a resident of Vallejo, California, and ALLEN VARICE was not authorized to use this credit card.

## Total Losses From The Conspiracy Calculated To Date

23.    In total, the losses calculated to date from the Co-Conspirators' scheme exceed $1.3 million.